# EXHIBIT A

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO.: 0:18-cv-60767

KIP BARNETT and PHILLIP DUNLEAVEY
individually and on behalf of all
others similarly situated,

       Plaintiffs,                                **CLASS ACTION**

                                           **JURY TRIAL DEMANDED**

v.

PREMTECH, LLC, a Georgia
Limited Liability Company d/b/a/ Bitcoin Depot,
LUX VENDING, LLC, a Georgia Limited
Liability Company and BRANDON MINTZ,
a natural parson,

       Defendants.

_____/

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs Kip Barnett and Phillip Dunleavy bring this action against Defendants, Premtech, LLC, a Georgia Limited Liability Company d/b/a Bitcoin Depot ("Bitcoin Depot"), Lux Vending, LLC, a Georgia Limited Liability Company ("Lux"), and Brandon Mintz ("Mintz"), a natural parson (collectively "Defendants") and allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1.       This is an action under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"). Defendant Bitcoin Depot[1] is a Georgia based company that operates as a buyer and

---

[1] All references, or allegations made against Bitcoin Depot are also to be referenced or alleged against Lux.

000001/01038805_1

re-seller of cryptocurrencies, including but not limited to, Bitcoin, Litecoin, and Ethereum, to the general public through their "Bitcoin ATMs."  As of the filing of this lawsuit, Bitcoin Depot has installed 125 Bitcoin ATMs across the United States capable of serving 85 million people.[2] Defendant Mintz is, upon information and belief, the sole owner of Bitcoin Depot and upon information and belief, controls its activity with regards to the marketing text messages at issue in this Complaint.

2.      In efforts to increase transactions and drum up business for Defendants' Bitcoin ATMs, Defendants sent class members thousands of illegal marketing text messages providing different types of promotions redeemable for future transactions, as well as advertisements of new Bitcoin ATM locations.  These messages were sent by Defendants without first obtaining express written consent to send such marketing text messages as required under the TCPA and its implementing regulations.

3.      These messages were sent using mass-automated technology either directly or through a third-party company hired by Defendants to send marketing text messages on Defendants' behalf.

4.      In sum, Defendants knowingly and willfully violated the TCPA, causing injuries to Plaintiffs, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

5.      Through this action, Plaintiffs seek injunctive relief to halt Defendants' illegal conduct. Plaintiffs also seek statutory damages and any other available legal or equitable remedies resulting from the illegal actions of Defendants.

---

Upon information and belief Lux is an alter-ego of Bitcoin Depot or *vice versa*.

[2]  https://www.bitcoindepot.com/single-post/2018/04/04/Bitcoin-Depot-Expands-to-15-States-to-Provide-Cryptocurrency-Access-to-85-Million-People (last accessed April 12, 2018).

000001/01038805_1

## JURISDICTION AND VENUE

6.      Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiffs allege violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiffs allege a nationwide class, which will result in at least one class member belonging to a different state than Defendants. Plaintiffs seek up to $1,500.00 in damages for each call (text message) in violation of the TCPA, which, when aggregated among a proposed class numbering in the thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

7.      Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendants are deemed to reside in any judicial district in which they are subject to the court's personal jurisdiction, and because Defendants provide and market their products within this district thereby establishing sufficient contacts to subject them to personal jurisdiction.  Further, Defendants' tortious conduct against Plaintiffs occurred within this district.

## PARTIES

8.      Plaintiff Barnett is a natural person who, at all times relevant to this action, was a resident of Broward County, Florida.

9.      Plaintiff Dunleavey is a natural person who, at all times relevant to this action, was a resident of Miami-Dade County, Florida.

10.     Defendant Bitcoin Depot is a Georgia limited liability company whose principal office is located in Atlanta, Georgia.

11.     Defendant Lux is a Georgia limited liability company whose principal office is located in Atlanta, Georgia.

12.     Defendant Mintz is a natural person, and the sole owner of Bitcoin Depot and Lux,

residing in Atlanta, Georgia.

13.     Defendant Mintz, markets, and controls all of Lux's and Bitcoin Depot's conduct in the United States including the transmissions of the violating text messages at issue in this case.

## THE TCPA

14.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

15.     A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph. 47 U.S.C. § 227(b)(3).

16.     The element of "willfulness" is demonstrated by evidence that the defendant acted deliberately or intentionally rather than merely through negligence.

17.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

18.     The TCPA exists to prevent communications like the ones described within this Complaint. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

19.     In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

20.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

21.     With respect to telemarketing, 47 C.F.R. § 64.1200(c) provides:

No person or entity shall initiate any telephone solicitation to:

(1) Any residential telephone subscriber before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location), or

(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator.

22.     In 2012, the FCC issued an order further restricting automated telemarketing calls, requiring "prior express <u>written</u> consent" for such calls to wireless numbers.  *See In the Matter of Rules*

000001/01038805_1

*& Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

23.     To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent . . . and [the plaintiff] having received the information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

24.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

25.     "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

26.     "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii) & 47 C.F.R. § 64.1200(f)(12)).

27.     The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services

during the call *or in the future. Id.*

28.     In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

29.     If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

30.     Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("The FCC has determined that a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)").

31.     As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

## PLAINTIFF BARNETT

32.     In an effort to increase transactions at Defendants' Bitcoin ATMs, Defendants sent class members thousands of illegal marketing text messages providing different types of promotions redeemable for future transactions between class members and Defendants as well as advertisements of

new Bitcoin ATM locations.  These messages were sent by Defendants without first obtaining express

written consent to send such marketing text messages as required to do so under the TCPA.

33.     Plaintiff Barnett continues to receive these marketing text messages on his cellular

telephone number, ending in 8439 (the "8439 Number").

34.     By way of example, such automatic transmissions caused the following text

messages to be received on Plaintiff Barnett's cellular telephone number on February 21, 2018:



35.     Defendants' text messages constitute telemarketing because they encourage the

future sale or purchase of cryptocurrencies to or from Defendants by individuals such as Plaintiff

Barnett.

36.     The website promoted in the text message depicted above solicits the recipient to visit

000001/01038805_1

one of Defendants' several new Bitcoin ATMs and engage in transactions with Defendants.

37.     Defendants earn a profit when consumers like Plaintiffs engage in transactions with Defendants' Bitcoin ATMs.

38.     Plaintiff Barnett received the subject text messages within this judicial district and, therefore, Defendants violation of the TCPA occurred within this district.

39.     Plaintiff Barnett is the subscriber and sole user of the 8439 Number.

40.     At no point in time did Plaintiff provide Defendants with his express written consent to be contacted using an ATDS.

41.     At all times relevant herein, Plaintiff Barnett's cellular telephone number is listed on the national do-not-call registry of persons who do not wish to receive telephone solicitations.

42.     The impersonal and generic nature of Defendants' text message, demonstrates that Defendants utilized an ATDS in transmitting the messages.

43.     The text messages originated from telephone number 404-996-1102, a number which is owned and operated by Defendants, and is answered by a prerecorded message – not a live operator –  instructing the caller to visit Defendant's website.

44.     The number used by Defendants (404-996-1102) is known as a "long code," a standard 10-digit phone number that enabled Defendants to send SMS text messages *en masse*, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual.

45.     Long codes work as follows:  Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic. These SMS gateway providers send and receive SMS traffic to and from the mobile phone networks' SMS centers, which are responsible for relaying those messages to the intended mobile

phone. This allows for the transmission of a large number of SMS messages to and from a long code.

46.     In sending text messages to Plaintiff and Class Members, Defendants utilized equipment that has the capacity store telephone numbers using a random or sequential generator, or to dial such numbers.  The equipment also has the capacity to dial telephone numbers from a list of numbers without human intervention.

47.     Defendants' unsolicited text messages caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff and caused disruption to his daily life.

## PLAINTIFF DUNLEAVEY

48.     On or about February 7, 2018, Plaintiff Dunleavey attempted to use a Bitcoin Depot ATM in Miami-Dade County.  Plaintiff Dunleavey, while attempting to use the ATM, was informed that there was a minimum amount of Bitcoin to deposit, which upon information and belief was $100.00.   Plaintiff was only in possession of $70.00 worth of Bitcoin to deposit, and therefore was unable to complete the transaction.  Plaintiff Dunleavey was required to submit his telephone number to the Bitcoin Depot ATM, however at no time did he consent to receive telemarketing text messages.

49.     On February 27, 2018, Defendants sent the following two telemarketing text messages to Plaintiff Dunleavey's cellular telephone number ending in 2914 (the "2914 Number"):

000001/01038805_1



50.     Defendants' text messages were transmitted to Plaintiff Dunleavey's cellular telephone, and within the time frame relevant to this action.

51.     Defendants' text messages constitute telemarketing because they encouraged the future sale or purchase of cryptocurrencies to or from Defendants by individuals like Plaintiff Dunleavey.

52.     The second text message received by Plaintiff Dunleavey on February 27, 2018 contained a link that brought you to Bitcoindepot.com (a website owned and operated by Defendant) advertising new Bitcoin Depot ATM's in Miami-Dade County:



53.     Plaintiff's counsel, Andrew Shamis, sent a demand letter to Brandon Mintz at

Lux Vending, LLC on March 1, 2018 (Exhibit "B") regarding this TCPA violation.

54.     On March 6, 2018, after receiving the demand letter, Defendants, sent yet another

two telemarketing text messages to Plaintiff Dunleavey:



55.     In response to the demand letter, Defendants admitted that the text messages sent to Plaintiff Dunleavey were "marketing text message[s]."

56.     Defendants further admitted that the correspondence dated March 1, 2018 (the demand letter) was notice that Plaintiff Dunleavy has revoked his consent to receive *autodialed* and prerecorded calls or SMS text messages related to Bitcoin Depot's *marketing* messages, and that he would no longer receive marketing text messages.

57.     The numbers that transmitted the text messages, (404) 860-2433 and (404) 649-5327, are operated by or on behalf of Defendants, and are answered by a prerecorded message – not a live operator –  instructing the caller to visit Defendant's website.

58.     The numbers used by Defendants (404-860-2433 and 404-649-5327) are known

as a "long code," a standard 10-digit phone number that enabled Defendants to send SMS text messages *en masse*, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual.

59.     Long codes work as follows:   Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic. These SMS gateway providers send and receive SMS traffic to and from the mobile phone networks' SMS centers, which are responsible for relaying those messages to the intended mobile phone. This allows for the transmission of a large number of SMS messages to and from a long code.

60.     In sending text messages to Plaintiff and Class Members, Defendants utilized equipment that has the capacity store telephone numbers using a random or sequential generator, or to dial such numbers.   The equipment also has the capacity to dial telephone numbers from a list of numbers without human intervention.

61.     Plaintiff Dunleavey received the subject texts within this judicial district and, therefore, Defendants' violation of the TCPA occurred within this district.   Upon information and belief, Defendants caused other text messages to be sent to individuals residing within this judicial district.

62.     At no point in time did Plaintiff Dunleavey provide Defendants with his express written consent to be contacted using an ATDS.

63.     Plaintiff Dunleavey is the subscriber and sole user of the 2914 Number, and is financially responsible for phone service to the 2914 Number.

64.     Defendants' unsolicited text messages caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

000001/01038805_1

Defendant's text messages also inconvenienced Plaintiff and caused disruption to his daily life.

## <u>COMMON FACTS</u>

65.    The impersonal and generic nature of Defendants' text messages demonstrates that Defendants utilized an ATDS in transmitting the messages. *See Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner and sent from short code); *Robbins v. Coca-Cola Co.*, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS)).  Furthermore, Defendant admit to using an ATDS in the response letter attached as Plaintiff's Exhibit "B."

66.    In fact, Defendants admits to using "autodialed and prerecorded message calls or SMS text messages."[3]

67.    Specifically, upon information and belief, Defendants, directly, or through a third-party telemarketer, utilized a combination of hardware and software systems to send the text messages at issue in this case.

68.    Defendants' unsolicited text messages caused Plaintiffs actual harm, including invasion of privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

---

[3] https://www.bitcoindepot.com/terms (last accessed on April 5, 2018).

000001/01038805_1

Defendants' text messages also inconvenienced Plaintiffs and caused disruption to their daily life. *See Patriotic Veterans, Inc. v. Zoeller*, No. 16-2059, 2017 WL 25482, at *2 (7th Cir. Jan. 3, 2017) ("Every call uses some of the phone owner's time and mental energy, both of which are precious.").

69.    As outlined above, upon information and belief, Defendants may have employed a third-party company to send the marketing text messages in question to Plaintiffs and, as such, are vicariously liable for the TCPA violations arising from said text messages.

### *Vicarious Liability*

70.    Under the TCPA, as interpreted by the FCC, a person or entity can be liable for calls made on its behalf even if that person or entity did not directly dial those calls.

71.    The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

72.    In 2008, the FCC reiterated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violations." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 Request of ACA International for Clarification and Declaratory Ruling, CG 02-278, 23 F.C.C.R. 559 at ¶10 (Jan. 4, 2008) (specifically recognizing "on behalf of" liability in the context of a robocall sent to a consumer by a third party on another entity's behalf under 47 U.S.C. 227(b)) .

73.    In May of 2013, the FCC reinforced this issue. *See* In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, --- FCC Rcd. --- (F.C.C. May 9, 2013) (hereinafter "2013 FCC Ruling Order") (clarifying that "a seller … may be vicariously liable under federal common law agency-related principles for violations of either section 227(b) or 227(c)

committed by telemarketers that initiate calls to market its products or services."). The FCC rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id*. n.107.

74.     The 2013 FCC Order further explained:

"To provide guidance in this area, we find that the following are illustrative examples of evidence that may demonstrate that the telemarketer is the seller's authorized representative with apparent authority to make the seller vicariously liable for the telemarketer's section 227(b) violations. For example, apparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct. At a minimum, evidence of these kinds of relationships – which consumers may acquire through discovery, if they are not independently privy to such information – should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent.

"[ ] In sum, under our current rules and administrative precedent interpreting and implementing sections 227(b) and 227(c), we do not think that an action taken for the benefit of a seller by a third-party retailer, without more, is sufficient to trigger the liability of a seller under section either section 227(c) or section 227(b). However, we see no reason that a seller should not be liable under those provisions for calls made by a third-party telemarketer when it has authorized that telemarketer to market its goods or services. In that circumstance, the seller has the ability, through its authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised. In the case of either actions to enforce section 227(b) or actions to enforce do-not-call restrictions under section 227(c), we stress that nothing in this order requires a consumer to provide proof – at the time it files its complaint – that the seller should be held vicariously liable for the offending

call."

Id. at ¶¶ 46-47).

75.     Accordingly, it is unambiguously clear that an entity can be liable under the TCPA for a call made on its behalf even if the entity or individual did not directly place the call under a number of theories, including vicarious liability. Under those circumstances, both Defendants are properly deemed to have initiated the call through the person or entity that actually placed the calls.

### *Willful or Knowing*

76.     If the court finds that a defendant willfully or knowingly violated the TCPA, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of 47 U.S.C. § 227(b)(3).

### <u>CLASS ALLEGATIONS</u>

77.     Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

78.     Plaintiff's brings this case on behalf of the following Classes:

> **The "Telemarketing Class"** All persons within the United States who, within the four years prior to the filing of this Complaint, was sent a marketing or promotional text message made through the use of any automatic telephone dialing system, from Defendants or any of their subsidiaries, or anyone on Defendants' or their subsidiaries' behalf, to said person's cellular telephone number, not for emergency purpose and without the recipient's prior express written consent.

> **The "Do Not Call Class"** All persons within the United States who, within the four years prior to the filing of this Complaint, was sent, from Defendants or any of their subsidiaries, or anyone on Defendants' or their subsidiaries' behalf more than one telephone call to said person's cellular telephone number within any 12-month period, by or on behalf of the same entity, without their prior express

consent and to which they object, while listed on the national Do Not Call Registry.

The "*Failure to Stop Class*" All persons within the United States who, after notifying defendant to "stop" calling, within the four years prior to the filing of this Complaint, was sent from Defendants or any of their subsidiaries or anyone on Defendant's or their subsidiaries' behalf more than one telephone call to said person's cellular telephone number within any 12-month period, by or behalf of the same entity, without their prior express consent.

79.     Plaintiff Barnett is a member of the Telemarketing Class and the Do Not Call Class.

80.     Plaintiff Dunleavey is a member of the Telemarketing Class and the Failure to Stop Class.

81.     Defendants and their employees or agents, Plaintiffs' attorneys and their employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death, and/or emotional distress are excluded from the Classes. Plaintiff does not know the number of members in the Classes, but believes the Class members number in the thousands, if not more.

## *Numerosity*

82.     Upon information and belief, Defendants have placed automated calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of each Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

83.     The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendants' call records.

000001/01038805_1

*Common Questions of Law and Fact*

84.     There are numerous questions of law and fact common to each Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

    a)  Whether Defendants made non-emergency calls to Plaintiffs and Class members' cellular telephones using an ATDS;

    b)  Whether any of such calls were made to persons whose cellular telephone number is listed on the national do-not-call registry of persons who do not wish to receive telephone solicitations.

    c)  Whether Defendants can meet their burden of showing that they obtained prior express written consent to make such calls;

    d)  Whether Defendants conduct was knowing and willful;

    e)  Whether Defendants are liable for damages, and the amount of such damages; and

    f)  Whether Defendants should be enjoined from such conduct in the future.

85.     The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiffs and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

*Typicality*

86.     Plaintiffs' claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

*Protecting the Interests of the Class Members*

87.     Plaintiffs' are representatives who will fully and adequately assert and protect the

000001/01038805_1

20 of 25

interests of both Classes, and has retained competent counsel to assist in doing so. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Classes.

*Superiority*

88.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes are economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each Class member resulting from Defendants wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

89.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
### Violation of the TCPA, 47 U.S.C. § 227(b)

90.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

91.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a … cellular telephone

service ….” 47 U.S.C. § 227(b)(1)(A)(iii).

92.     “Automatic telephone dialing system” refers to any equipment that has the “capacity to dial numbers without human intervention.” *See, e.g., Hicks v. Client Servs., Inc.*, No. 07-61822, 2009 WL 2365637, at *4 (S.D. Fla. June 9, 2009) (citing FCC, In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991: Request of ACA International for Clarification and Declaratory Ruling, 07–232, ¶ 12, n.23 (2007)).

93.     Defendants – or third parties directed by Defendants– used equipment having the capacity to dial numbers without human intervention to make marketing telephone calls to Plaintiffs' cellular telephones.

94.     These calls were made without regard to whether Defendants had first obtained express written consent to make such calls. In fact, Defendants did not have prior express written consent to call the cell phones of Plaintiff when the subject calls were made.

95.     Defendants therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make marketing telephone calls to the cell phones of Plaintiff without his prior express written consent.

96.     All Defendants are directly, jointly, or vicariously liable for each such violation of the TCPA.

97.     As a result of Defendants conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiffs were harmed and are entitled to a minimum of $500.00 in damages for each violation. Plaintiffs are also entitled to an injunction against future calls.

### COUNT II
### Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b)

98.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth

000001/01038805_1

herein.

99.     At all times relevant, Defendants knew or should have known that their conduct as alleged herein violated the TCPA.

100.     Defendants knew that they did not have prior express written consent to send these text messages.

101.     Because Defendants knew or should have known that Plaintiffs had not given prior express consent to receive its autodialed calls to their cellular telephones, the Court should treble the amount of statutory damages available to Plaintiffs pursuant to § 227(b)(3) of the TCPA.

102.     All Defendants are directly, jointly, or vicariously liable for each such violation of the TCPA.

103.     As a result of Defendants violations, Plaintiffs are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

**COUNT III**
**Violation of 47 C.F.R. §64.1200(c)**

104.     Plaintiff Barnett re-alleges and incorporates paragraphs 1-89 as if fully set forth herein.

105.     Defendants – or third parties directed by Defendants, for telemarketing purposes, placed multiple automated text messages to persons whose cellular telephone numbers are listed on the national do-not-call registry of persons who do not wish to receive telephone solicitation.

106.     Plaintiff Barnett received more than one telephone call within any 12-month period, by or on behalf of the Defendants, without their prior express consent and to which they object.

107.     Defendants therefore, violated 47 C.F.R. § 64.1200(c) by initiating telephone

solicitations to person who have registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations.

108.     All Defendants are directly, jointly, or vicariously liable for each such violation of the TCPA.

109.     As a result of Defendants conduct and pursuant to 47 C.F.R. 64.1200(c), Plaintiff Barnett was harmed and is entitled to a minimum of $500.00 in damages for each violation. Plaintiff is also entitled to an injunction against future calls.

**WHEREFORE**, Plaintiffs pray for the following relief:

a)  A declaration that Defendants practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227 and the applicable rules promulgated thereunder;

b)  A declaration that Defendants violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 and the applicable rules promulgated thereunder were willful and knowing;

c)  An injunction prohibiting Defendants from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones without the prior express consent of the called party;

d)  An injunction prohibiting Defendants from making calls and text messages to numbers assigned to the national do not call registry

e)  An award of actual, statutory damages, and/or trebled statutory damages; and

f)  Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated:  April 16, 2018

By: /s/ *Jibrael S. Hindi*
Jibrael S. Hindi, Esq.
**THE LAW OFFICE OF JIBRAEL S. HINDI, PLLC**
110 SE 6th Street
Ft. Lauderdale, FL 33301
Tel: (954) 907-1136
Fax: (855) 529-9540
Email: jibrael@jibraellaw.com

**KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT**
Scott A. Edelsberg
One West Las Olas Boulevard, Suite 500
Fort Lauderdale, Florida 33301
Tel: 954-525-4100
Email:  edelsberg@kolawyers.com

**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave., Suite 400
Miami, FL 33132
Tel: (305) 479-2299
Fax: (786) 623-0915
Email: efilings@shamisgentile.com

**HIRALDO P.A.**
Manuel S. Hiraldo
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Telephone: 954-400-4713
Email: mhiraldo@hiraldolaw.com

000001/01038805_1